STATE OF WEST VIRGINIA

*v.*

25 SLOT MACHINES

(No. 14252)

Decided July 17, 1979.

*Chauncey H. Browning,* Attorney General, *Richard L. Gottlieb,* Assistant Attorney General, for P.E.

*Carl N. Frankovitch, Frankovitch & Anetakis,* for D.E.

HARSHBARGER, JUSTICE:

On September 7, 1977, twenty-five slot machines were seized at four fraternal organizations in Brooke County.[1] On September 29, the State petitioned the circuit court of that county for authority to destroy the ma-

---

[1]Search warrants were executed at the Emry Watkins Post 45 American Legion, 998 Main Street, Follansbee; Wellsburg Post No.

chines under *W. Va. Code*, 61-10-1. The petition alleged that the State did not know who owned them. The machines had benevolent friends who employed counsel for them. Acting upon his advice they admitted that the State did not have sufficient information to ascertain ownership. However, the machines would or could not divulge who owned them. The State moved to strike the reply because the mechanisms lacked standing to contest their own destruction.[2]

The circuit court in memorandum stated that "because the person who kept or exhibited the slot machines is not made a party to the petition, this Court has no right to order destruction." The memorandum concluded: "By this opinion the Court does not mean to intimate that slot machines are not contraband in and of themselves. Nevertheless, the interest of justice, it would appear, would require the State to bring a proceeding for authority to destroy against the parties who kept or exhibit [sic] the slot machines." This memorandum was incorporated into a March 15, 1978 order that dismissed the petition because the court lacked jurisidiction to order the twenty-five slot machines destroyed. The State appeals.

The only issue is whether our statute permits destruction of gaming devices without the prior conviction of those who owned them, for using them for gaming.

*W. Va. Code*, 61-10-1 states:

> Any person who shall keep or exhibit a gaming table, commonly called A. B. C. or E. O. table, or faro bank, or keno table, or any slot machine,

---

3 American Legion, 735 Charles Street, Wellsburg; Wellsburg Post No. 1553 Fraternal Order of Elks, 814 Charles Street, Wellsburg; Follansbee Post No. 3537 Veterans of Foreign Wars Club, 827 Main Street, Follansbee. There is no dispute about the legality of the warrants, which alleged that the machines were being used for gambling purposes.

[2] Idle speculation about employment by these machines, of expert counsel, has led us to conclude that if friends of the machines did not fund his services perhaps he collects his fee by pulling the operating levers of the instruments.

multiple coin console machine, multiple coin console slot machine or device in the nature of a slot machine, or any other gaming table or device of like kind, under any denomination, or which has no name, whether the game, table, bank, machine or device be played with cards, dice or otherwise, or shall be a partner, or concerned in interest, in keeping or exhibiting such table, bank, machine or gaming device of any character, shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not less than two nor more than twelve months and be fined not less than one hundred nor more than one thousand dollars. Any such table, faro bank, machine or gaming device, and all money staked or exhibited to allure persons to bet at such table, or upon such gaming device, may be seized by order of a court, or under the warrant of a justice, and the money so seized shall be forfeited to the county and paid into the treasury of the county in which such seizure is made, and the table, faro bank, machine or gaming device shall be completely destroyed: Provided, however, that the provisions of this section shall not extend to coin-operated nonpayout machines with free play feature or to automatic weighing, measuring, musical and vending machines which are so constructed as to give a certain uniform and fair return in value or services for each coin deposited therein and in which there is no element of chance.

Counsel for the "slots" argues that the machines cannot be destroyed unless their owners are first convicted under the statute, relying in part upon *Woods v. Cottrell,* 55 W. Va. 476, 47 S.E. 275 (1904), where this Court held that under Section 1, c. 151, Code 1899, (now *Code,* 61-10-1), whether a gaming table could be destroyed depended upon the guilt or the innocence of the accused owner.[3]

---

[3]Section 1 of Chapter 151, Code 1899 applied to gaming tables, commonly called A.B.C. or E.O. tables or faro banks or Keno tables or tables of like kind and provided that they be burnt. *In Woods v. Cottrell, supra,* a slot machine was seized under that section.

Though the thing be plainly an instrument of gaming under the statute, yet, if its owner be acquitted of using it for that purpose, it cannot be destroyed, as it is only instruments actually used and kept for gaming that are thus condemned to destruction. 55 W. Va. at 480, 47 S.E. at 277.

In *State v. Dawson*, 177 W. Va. 125, 184 S.E. 253 (1936), we invalidated an indictment under *Code*, 61-10-1 because of its form and said:

In light of the disposition made of the case upon the conviction of the accused, the questions raised with reference to that part of the order of judgment which deals with the destruction of the property seized under the search warrant need not be discussed at length. The destruction of the seized property could have been ordered by the court only upon the theory that it was justified by the conviction of the accused. When that conviction is set aside, necessarily, the order of judgment fails with respect to the destruction of the property also. 117 W. Va. at 132, 184 S.E. at 256.

To the same effect is *Cambria v. Bachmann*, 93 W. Va. 463, 118 S.E. 336 (1923).

We disagree with these cases insofar as they compel prior conviction of one accused of keeping or exhibiting slot machines before the machines can be destroyed. Nothing in the statute even implies such a proposition. *See, Smith v. One Super Wild Cat Console Machine*, 10 Or. App. 587, 500 P.2d 498 (1972), where the court noted that although a prior conviction was required before forfeiture could take place at common law, the Oregon statute did not require or permit the "conclusion that a prior conviction must be alleged or proved in connection with a forfeiture procedure thereunder." 10 Or. App. at 591, 500 P.2d at 499. (The Oregon statute was found unconstitutional because there was no provision for hearing or notice to owners of gambling devices.)[4]

---

[4]The constitutionality of this section of our law has previously been determined in *Cambria v. Bachmann*, 93 W. Va. 463, 118 S.E. 336 (1923), and the statute upheld.

Gambling devices cannot be summarily destroyed unless they are being used for gambling purposes; but the statute makes them *prima facie* illegal because of their inherent nature—we may judicially notice that they are ordinarily not furniture nor decorative devices. We agree with the Supreme Court of Iowa holding in *State v. Doe,* 227 Iowa 1215, 290 N.W. 518 (1940) and find that because the slot machines in question are specifically named under the statute as gambling devices (and no one—not even their lawyer, who might be expected to be the first to do so—has disputed the fact that the devices seized are slot machines) they are "subject to forfeiture unless the person named in the information or claiming an interest in the property shows cause why they should not be so forfeited." 227 Iowa at 1223, 290 N.W. at 523.[5]

Gambling devices under *Code,* 61-10-1 are not *per se* illegal. The affidavits by which warrants were issued authorizing seizure establish their use for gaming and that they therefore are *prima facie* contraband. "[D]ue process, . . . requires, at the very least, that the State prove by a preponderance of the evidence that the property sought to be forfeited was used in an illegal manner. . . ." *Rumfolo v. State,* 535 S.W.2d 16 at 20 (Tex. Civ. App. 1976).[6]

---

[5]Some courts have dismissed an entire appeal because no one declared ownership in gambling devices that had been seized by the State authorities, holding that they had no jurisdiction over the matter, and thus there was nothing in the record for appellate review. *See, State v. Twenty-Nine Slot Machines,* 184 Kan. 429, 337 P.2d 689 (1959).

[6]Had we found that *Code,* 61-10-1 makes all gambling devices illegal *per se* no matter what their use or purpose, no forfeiture hearing would be required. *See, State ex rel. Attorney General v. Kizer,* 164 S.C. 383, 162 S.E. 444 (1932), where the court upheld a statute which authorized summary destruction of slot machines because of the nature of the property and the purpose of enacting the statute—to protect the public. For further discussion of due process considerations in the destruction of gambling devices *see,* Annot., 14 A.L.R. 3d 366 (1967).

Therefore, we find that the circuit court has jurisdiction to order destruction, but notice must be given to those in whose possession the machines were found, and hearing given them if they appear and claim ownership. The possessors must prove by a preponderance of the evidence that the slot machines were being kept or exhibited innocently, not for gambling purposes. If no one appears to vouch their purity or if those who appear do not carry their burden of proof the machines may be destroyed.

*Affirmed.*