380 S.E.2d 439

**Otis Ted BUZZO**

v.

**CITY OF FAIRMONT.**

**No. 18239.**

Supreme Court of Appeals of West Virginia.

April 19, 1989.

Ross Maruka, Roger D. Curry, McLaughlin, Curry & Williams, Fairmont, for Otis Ted Buzzo.

George R. Higinbotham, Fairmont, for City of Fairmont.

J. Montgomery Brown, P.A., Fairmont, for State.

WORKMAN, Justice.

This case is before the Court upon the appeal of Otis Ted Buzzo from the July 7, 1987, Final Order of the Marion County Circuit Court in which the court ruled, based on a declaratory judgment action, that the appellant's property, consisting of two electronic video poker machines, were illegal *per se* and ordered the two machines destroyed pursuant to *W. Va. Code* § 61–10–1 [1970]. The only assignment of error made by the appellant is that the trial court erred in this ruling. We reverse the decision of the lower court and hold that the electronic video poker machines are not illegal *per se*, but fall within the exemption to *Code*, 61–10–1.

The appellant, Ted Buzzo, was in the business of renting "electronic draw poker machines" (hereinafter called poker machines) and similar devices. He rented these machines to several bar owners in Fairmont.

On December 13 and 14, 1985, the Fairmont Police Department conducted raids on certain bars in Fairmont. The police arrested proprietors or bartenders and seized several items, including the appellant's two poker machines. As part of the prosecution of the people arrested in the raid, the State sought forfeiture of the appellant's poker machines so the machines could be destroyed.

At the forfeiture hearing, the police officer involved in the raids acknowledged the machines were seized solely on the basis that in his view, they were illegal. Further, no payoffs involving the poker machines were made to the police officer, or to anyone else in his presence. Finally, at the hearing, the defendant's attorney elicited the following information about the operation of the poker machines from Robert O. Jones, a lieutenant with the Fairmont Police Department:

Q: And in absence of them paying any money directly to the player, that is the player's only indication of, for instance, how he's doing with the machine, the number of free plays accumulated?

A: We acknowledge that places of business have these machines and pay these people off. That's the reason for the game knock off on the machine. They give them a quarter for each game they have on the machine. If somebody has a certain amount of games, they pay them the money and take the games off the machine.

Q: Well, you indicated you don't have any evidence in these cases of that being done, do you?

A: Not in this particular case. No.

There was no evidence that these machines were being used as gambling devices other than the police officer's belief that machines were inherently illegal.

The electronic video poker machine is housed in a cabinet with a television screen above a panel of controls. One or more coins, usually quarters, are inserted into the machine. The player receives a point for each coin inserted. Inserting more than one coin increases the odds or payoff ratio. Actual play begins when the player pushes a button on the machine. Next, the player selects a number of points to bet on the game. The machine then randomly displays images of five common playing cards. The player can either play the hand dealt by the machine, or he can discard any of the cards he chooses by pressing the appropriate buttons. Another button is pushed to replace those cards which were discarded. A final hand is displayed. This hand is electronically compared to a set of odds which determines whether the player wins or loses. A meter display on the television screen advises the player not only how many coins he inserted, but also how he or she is doing. If the player does well, he wins free plays. When the player

decides to quit playing, any balance of remaining points on the machine can be eliminated by turning a "knock-off" switch which takes the unused credits off the machine.

The sole issue before the Court is whether the circuit court erroneously held that the electronic video poker machines are illegal *per se.* *W.Va.Code* § 61–10–1 [1970] states:

> Any person who shall keep or exhibit a gaming table, commonly called A.B.C. or E.O. table, or faro bank, or keno table, or any slot machine, multiple coin console machine, multiple coin console slot machine or device in the nature of a slot machine, or any other gaming table or device of like kind, under any denomination, or which has no name, whether the game, table, bank, machine or device be played with cards, dice or otherwise, or shall be a partner, or concerned in interest, in keeping or exhibiting such table, bank, machine or gaming device of any character, shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not less than two nor more than twelve months and be fined not less than one hundred nor more than one thousand dollars. Any such table, faro bank, machine or gaming device, and all money staked or exhibited to allure persons to bet at such table, or upon such gaming device, may be seized by order of a court, or under the warrant of a justice [magistrate], and the money so seized shall be forfeited to the county and paid into the treasury of the county in which such seizure is made, and the table, faro bank, machine or gaming device shall be completely destroyed: *Provided, however, that the provisions of this section shall not extend to coin-operated nonpayout machines with free play feature or to automatic weighing, measuring, musical and vending machines which are so con-*

> *structed as to give a certain uniform and fair return in value or service for each coin deposited therein and in which there is no element of chance.* (emphasis added).

Counsel for the appellant argues that the poker machines are not *per se* illegal and in order to properly seize and forfeit them to the State, there must be proof that the machines were being used as gambling devices. It is undisputed that the poker machines and devices of like kind are subject to forfeiture proceedings and will be forfeited and destroyed when they are actually used in gambling activity. *W.Va.Code* § 61–10–1 *et seq.,* as amended.

In *State v. Twenty-five Slot Machines,* 163 W.Va. 459, 256 S.E.2d 595 (1979), this Court, addressing the issue of whether the slot machines could be destroyed without first obtaining a conviction of the owner of the machines, held that

> [g]ambling devices cannot be summarily destroyed unless they are being used for gambling purposes; but the statute makes them *prima facie* illegal because of their inherent nature—we may judicially notice that they are ordinarily not furniture nor decorative devices.

*Id.,* 163 W.Va. at 463, 256 S.E.2d at 598.

■ The rationale for this Court's decision in that case was centered on a due process analysis. In order to avoid a violation of the property owner's due process rights, notice of distribution and a hearing must be given to the person(s) who claim ownership.[1] If the gambling device in question is one specifically named in the statute, it is *prima facie* illegal under the statute. The burden of proof then shifts to the possessors who "must prove by a preponderance of the evidence that the slot machines were being kept or exhibited innocently, not for gambling purposes."[2] *Id.* If the gambling device is not one specifically named in the statute, then the burden of proof is on the State to show

---

1. This aspect of the appellant's due process rights was complied with and is not at issue in this case.

2. The attorney General for West Virginia issued an opinion on September 14, 1983, in which he concluded that "[m]achines, devices, tables and items mentioned in *Code,* 61–10–1, including Draw Poker video games, are not *per se* illegal." 60 Op.Atty.Gen. 84, 93.

that this particular machine or device is one condemned by the statute. *See State v. Calandros, infra.*

In *Twenty-five Slot Machines*, slot machines were clearly one of the devices made illegal by statute. In the present case, however, even though the poker machines fall within the "multiple coin console machine" prohibited by the statute, it is unclear whether the poker machines also fall within the exemption of the statute as "coin-operated nonpayout machines with free play feature." *Code*, 61–10–1. Regardless of whether the poker machines are exempted by the statute, this Court made it quite clear that "[g]ambling devices under *Code*, 61–10–1 are not *per se* illegal." *Twenty–Five Slot Machines*, 163 W.Va. at 463, 256 S.E.2d at 598.

Thus the real question is whether these particular machines are included in the exemption to the statute and, therefore, not subject to seizure by the police unless the State can prove they are used as gambling devices. If the poker machines are not exempted, then a *prima facie* presumption of illegality arises for the appellant to overcome. *Id.*

In *State v. Calandros*, 140 W.Va. 720, 86 S.E.2d 242 (1955) this Court was faced with a situation similar to the present case.[3] Just as the slot machine or one-armed bandit named in *Calandros* was not specifically named in the statute, neither was the poker machine named as a gambling device within the statute in the present case.

In reversing the defendant's conviction under *W.Va.Code* § 61–10–1 [1923] this Court held:

> The device in question is referred to in the testimony as being similar to a "slot machine" or a "one armed bandit"; but we cannot assume that such devices are of "like kind" to those named in the statute. The mere fact that the device could possibly be used or adapted to gambling, does not make it of "like kind". The burden was on the State to establish that the table or device involved in this proceeding was one condemned by the statute. This, we think, it did not do. *Calandros*, 140 W.Va. at 728, 86 S.E.2d at 247.

In 1970, as mentioned above in footnote 3, the legislature amended *Code*, 61–10–1 to include "any slot machine, multiple coin console machine, multiple coin console slot machine or device in the nature of a slot machine ...," to correct the problem which was presented in *Calandros, supra.* However, this Court had already made it clear that the burden rests with the State to show that "the table or device involved ... was one condemned by the statute." *Calandros*, 140 W.Va. at 728, 86 S.E.2d at 247.

The State, in this case, offered insufficient evidence to show that these poker machines were ones that were condemned by the statute as multiple coin console machines. Even the police officers who seized the machines could produce *no evidence* that the machines were being used for gambling purposes.

Therefore, in determining whether the West Virginia statute exempts these particular poker machines, it is helpful to look to Judge Dennis Knapp's decision in *United States v. One Bally "Super 7" Pinball Gaming Device*, No. 70–266 CH (S.D.W.Va. filed April 6, 1973). In that decision, the

---

**3.** It is important to note that this case was decided under the pre–1970 amendment version of *W.Va.Code* § 61–10–1 [1923] which was as follows:

> Any person who shall keep or exhibit a gaming table, commonly called A.B.C. or E.O. table, or faro bank, or keno table, or any other gaming table or device of like kind, under any denomination, or which has no name, whether the game, table, bank or device be played with cards, dice or otherwise, or shall be a partner, or concerned in interest, in keeping or exhibiting such table, bank or gaming device of any character, shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not less than two nor more than twelve months and be fined not less than one hundred nor more than one thousand dollars. Any such table, faro bank, or gaming device, and all money staked or exhibited to allure persons to bet at such table, or upon such gaming device, may be seized by order of a court, or under the warrant of a justice, and the money so seized, after deducting therefrom one half for the person making the seizure, shall be forfeited to the county and paid into the treasury of the county in which such seizure is made, and the table, faro bank or gaming device shall be burned.

question of whether a pinball machine fell within the exemption provided for in *Code*, 61–10–1 was before the Court. As in the present case, it was necessary to examine the statutory construction of the code provision in question:

> Provided, however, that the provisions of this section shall not extend to coin-operated nonpayout machines with free play feature or to automatic weighing, measuring, musical and vending machines which are so constructed as to give a certain uniform and fair return in value or service for each coin deposited therein and in which there is no element of chance.

*Code*, 61–10–1. The real issue raised is in the interpretation of the phrase "which are so constructed as to give a certain uniform and fair return in value or service for each coin deposited therein and in which there is no element of chance." Does this phrase apply only to "automatic weighing, measuring, musical and vending machines" or does the phrase also apply to "coin operated nonpayout machines with free play feature."? [4]

In answering this question, the district court held that the phrase only modified "automatic weighing, measuring, musical and vending machines" and, therefore, concluded that the pinball machines were legal under the West Virginia statute. In its ruling, the court specifically stated:

> By their very nature, every coin operated nonpaying machine with a free play feature is a game which involves some degree of chance. A free play is not and could not be automatic. Luck and, to a limited degree, skill are the determining factors in winning a replay. Therefore, if the interpretation urged by plaintiff were adopted the statute would be a nullity with reference to the coin operat-

ed nonpayout machines with replay feature. The Courts have the duty to construe statutory provisions so as to avoid inconsistent results.

*One Bally "Super 7" Pinball Gaming Device*, No. 70–266 CH at 4.

We agree with the decision of the district court in *One Bally "Super 7" Pinball Gaming Device* and its interpretation of *W.Va.Code* § 61–10–1 [1970]. Like the pinball machines, and in every machine of this nature, whether it be an electronic video poker machine or a common video arcade machine known as Pac–Man, there is an element of chance present which affects the outcome of the game. It is even arguable that with the electronic video poker machine, the player's degree of skill with the game of poker has more of an impact on the outcome than chance, for if the player knows how to play poker, he will know which cards to discard to increase his odds of winning. If "no element of chance" in *Code*, 61–10–1, applied to "coin-operated nonpayout machines with free play feature", then essentially all video arcade machines like pinball machines would not be exempted from this statute and that could not have been the intent of the legislature. Consequently, we find that the electronic video poker machines which are the subject of this case also fall within the exemption since the evidence indicated that the machines were "coin operated nonpayout machines with a free play feature." *Code*, 61–10–1.

Finally, in *Powell v. Red Carpet Lounge*, 280 S.C. 142, 311 S.E.2d 719 (1984), a county sheriff brought action against entertainment establishments to test the legality of various machines including an electronic draw poker machine and a black jack machine. In interpreting a South Carolina

---

**4.** Originally, in *State v. Wassick*, 156 W.Va. 128, 191 S.E.2d 283 (1972), we considered the issue of whether free plays won by playing multiple coin pinball machines were prizes within the lottery statute, *W.Va.Code*, § 61–10–11 [1923]. This Court held

> [t]he "free plays" provided for in such machine are a prize because they have some value to the player either in playing additional games without charge or receiving a "payoff"

and the fact that the "free games" are won predominately by chance for a consideration because of the coins placed in the machine, we hold it to be a lottery per se under the lottery statue of this State.

*Wassick*, 156 W.Va. at 136, 191 S.E.2d at 288. However, the West Virginia Legislature in this amendment to the statute addressed the issue of "free plays" regarding gambling devices.

Statute similar to our West Virginia Statute in that it exempted "coin operated non-payout machines with a free play feature" [5] from those gambling devices prohibited by law, the court held that "[w]hile these machines, like dice and decks of cards, might be used for the purpose of gambling, there is no contention in this proceeding that the machines were used for that purpose or other illegal use." 311 S.E.2d at 721. Therefore, those machines were not gambling machines prohibited by the statute and were not subject to seizure.

Upon a review of all of the evidence in this case, it appears that the electronic video poker machines do fall within the exemption to *W. Va. Code* § 61–10–1 [1970] and are not subject to seizure and forfeiture under the statute unless evidence of use for illegal gambling purposes is established. In this case, no such evidence was presented.

Based upon the foregoing, the judgment of the Circuit Court of Marion County is reversed and the personal property, namely two electronic video poker machines seized by the Fairmont Police Department, are ORDERED returned to the appellant.

Reversed.

---

**5.** *S.C. Code Ann.* § 16–19–60 [1975] states that "[n]othing in §§ 16–19–40 [Unlawful games and betting] or 16–19–50 [Keeping unlawful gaming tables] shall extend to coin operated nonpayout machines with a free play feature; *provided,* that nothing herein shall authorize the licensing, possession or operation of any machine which disburses money or property to the player.