423 S.E.2d 612

**UNITED STATES of America, Plaintiff,**

v.

**John P. DOBKIN, aka Jack Dobkin; and Benjamin C. Dobkin, Defendants.**

**No. 21229.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1992.

Decided Oct. 22, 1992.

---

William A. Kolibash, U.S. Atty., Robert H. McWilliams, Jr., Asst. U.S. Atty., Wheeling, for plaintiff.

Arthur M. Recht, Volk, Frankovitch, Anetakis, Recht, Robertson & Hellerstedt, Robert P. Fitzsimmons, Fitzsimmons & Parsons, L.C., R. Gregory McDermott, McDermott, Bonenenberger, McDermott & Gallaway, Wheeling, for defendants.

NEELY, Justice:

This is a certified question from the United States District Court for the Northern District of West Virginia that asks us whether the use of video poker machines for gambling purposes is legal in West Virginia. Based upon our decision in *Buzzo v. City of Fairmont*, 181 W.Va. 87, 380 S.E.2d 439 (1989) we find that, although video poker machines themselves are not *per se* contraband and subject to seizure, their use for gambling purposes is prohibited by *W.Va.Code*, 61–10–1 [1970].

The defendants in this case have been indicted under 18 U.S.C. § 1955 and 18 U.S.C. § 1956(a)(1) based upon the predicate state law violation of *W.Va.Code*, 61–10–1 [1970]. A violation of *W.Va.Code*, 61–10–1 [1970] is a misdemeanor, punishable by confinement in jail for not less than two

nor more than twelve months, and a fine of not less than $100 nor more than $1,000. In stark contrast, a conviction under 18 U.S.C. 1955 translates into a probable sentence of ten months under the federal sentencing guidelines, and a conviction under 18 U.S.C. § 1956 translates into a probable sentence of three years.[1]

The initial indictment in this case was filed on 6 December 1991, charging the defendants with fifteen gambling offenses, thirteen of which were predicated upon *W. Va. Code*, 61–10–1 [1989]. The defendants subsequently filed motions to dismiss the various counts of the indictment, alleging, among other things, that the actions of which they were accused do not constitute violations under *W. Va. Code*, 61–10–1 [1970]. The United States then filed responses in opposition to the defendants' motions, and on 4 March 1992, a superseding indictment was filed, amending the thirteen counts of the original indictment predicated upon violation of *W. Va. Code*, 61–10–1 [1970], to allege further that the defendants' actions also violated *W. Va. Code*, 61–10–5, –6 and –11.

The district court presents the following questions of law to be answered:

(1) Whether use of these machines violates any West Virginia criminal statute, including but not limited to, *W. Va. Code*, §§ 61–10–1, –5, –6 and –11?

(2) If the results of machine play are determined by chance, does the answer to question 1 change?

(3) If the results of machine play are determined predominantly by chance, does the answer to question 1 change?

### I.

The electronic video poker machines at issue in this case are housed in cabinets with television screens above panels of controls. Coins or currency up to twenty dollar bills are inserted into the machine and the player receives a credit for each 25¢ inserted. Play begins when the player pushes a button on the machine and determines how many credits he wishes to bet on the game. The machine then deals the player a hand that he may either play or from which he may discard cards (exactly as he would in a five card draw poker game) by pressing the appropriate buttons. After the buttons have been pushed, the cards that were discarded are electronically replaced and a final hand is displayed.

The final hand displayed is electronically compared to a set of odds that determines whether the player wins or loses. A meter display on the television screen advises the player not only how many coins he inserted, but also how he is doing. If the player obtains certain hands, he wins credits. When the player decides to quit playing, any balance of remaining credits on the machine can be eliminated by a feature that takes the unused credits off the machine.

The poker machines in question may be used so that the player can either receive 25¢ per credit for each credit on the machine, or may play the machine until there are no more credits on the machine. The machine is designed so that money is not dispensed from the machine itself for accumulated credits. However, and this is the cynosure of this case, it is alleged that money is disbursed by a designated person (usually the bartender) in the establishment where the machine is located. There is no question that the machine is designed in such a way that over its lifetime the number of credits paid for will substantially exceed the number of credits won.

 We find that the use of video poker machines, when the "free game feature" is used to determine a monetary pay out, is prohibited by *W. Va. Code*, 61–10–1 [1970] and that betting on such machines violates *W. Va. Code*, 61–10–5 [1923] because, although there is some element of skill involved, poker or any electronic simulation thereof, is a game of chance. Fur-

---

**1.** A federal sentence depends on various factors that make up the federal sentencing guidelines: past offenses, age, acceptance of guilt, coopera-tion with authorities, etc. There is no statutory minimum sentence for either offense.

thermore, permitting such a video poker machine in a hotel or tavern when payments for winning hands are made in money or any thing of value other than free games is a violation of *W. Va. Code*, 61–10–6 [1923] because the use of such a machine for gambling, rather than amusement purposes is a violation of *W. Va. Code*, 61–10–1 [1970]. However, *W. Va. Code*, 61–10–11 [1939] is not violated by the use of video poker machines because such machines have no relation whatsoever to a lottery or raffle.

## II.

*W. Va. Code*, 61–10–1 [1970] provides in its entirety as follows:

"Any person who shall keep or exhibit a gaming table, commonly called A.B.C. or E.O. table, or faro bank, or keno table, or any slot machine *or device in the nature of a slot machine, or any other gaming table or device of like kind, under any denomination, or which has no name, whether the game, table, bank, machine or device be played with cards, dice or otherwise,* or shall be a partner, or concerned in interest, in keeping or exhibiting such table, bank, machine or gaming device of any character, shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not less than two nor more than twelve months and be fined not less than one hundred nor more than one thousand dollars. Any such table, faro bank, machine or gaming device, and all money staked or exhibited to allure persons to bet at such table, or upon such gaming device, may be seized by order of a court, or under the warrant of a justice [magistrate], and the money so seized shall be forfeited to the county and paid into the treasury of the county in which such seizure is made, and the table, faro bank, machine or gaming device shall be completely destroyed: Provided, however, That [sic] the provisions of this section shall not extend to coin-operated nonpayout machines with free play feature or to automatic weighing, measuring, musical

and vending machines which are so constructed as to give a certain uniform and fair return in value or services for each coin deposited therein, and in which there is no element of chance." [emphasis added]

It is obvious from the language of this statute that the legislature intended to prohibit the type of gambling that we ordinarily associate with slot machines, i.e., the player inserts money into a machine, pushes a button or pulls a lever, wheels spin or electronic impulses are initiated in some more or less random way, and as a result of this activity the player either loses or wins money. As early as *State v. Gaughan*, 55 W.Va. 692, 48 S.E. 210 (1904) this Court said (by adopting the language of the Circuit Court of Harrison County):

"Whether or not a person exhibiting or using a slot machine may be punished under the laws of this State prohibiting gaming depends wholly upon the fact of whether or not a slot machine is a gaming device."

*Gaughan* at 695, 48 S.E. at 211. Obviously, in the case before us, when video poker machines are used in such a way that accumulated free games are paid for in cash, the video poker machine is being used as a gaming device.

There is no question in our minds that in light of the broad language used by the legislature, the defendants had reasonable notice of what activity was prohibited. That language says:

"... or any other gaming table or device of like kind, under any denomination, or which has no name, whether the game, table, bank, machine or device be played with cards, dice or otherwise ..."[2]

This is clear warning to a person of ordinary intelligence that using any mechanical device for gambling purposes is prohibited, particularly when the proviso in *W.Va. Code*, 61–10–1 [1970] extends only to "coin-operated *nonpayout* machines with free play feature." *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939); *Grayned v. City of Rockford*, 408

2. *W.Va.Code*, 61–10–1 [1989].

U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1970); *Colender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The exhibitor of such a machine who is paying off on the free games might expect a gambling violation charge.

### III.

█ We recognize that in the federal case from which these questions were certified we are not looking at a federal effort to enforce a regulatory scheme where the penalty is a mere fine or treble damages, and that we are asked to decide the central issue in a significant criminal prosecution. Thus, there is every reason for us to invoke the time-honored maxim that criminal laws will always be construed most strongly in favor of the defendant and the corollary that any ambiguity in a criminal statute must be resolved in favor of the defendant and against the state.[3]

█ In this case the defendants argue that the proviso at the end of *Code,* 61–10–1 [1970] which excludes from the statute's operation "coin-operated nonpayout machines with free play feature ..." removes video poker machines from the purview of *Code,* 61–10–1 [1970] because the machine itself does not disburse money. Nonetheless, the words "nonpayout machines" in the proviso clearly indicate that the exception is limited to machines that do not pay out. There is no indication in the statute itself or otherwise that the pay out contemplated by the proviso need come *directly out of the machine* rather than from the local bartender.

Everywhere in America today, from shopping malls to airport waiting rooms, there are legitimate amusement machines that challenge a multitude of skills and provide as a reward for successful play free games that allow the "winner" to wile away additional time at no cost. These machines that have no monetary pay out whatsoever were what the legislature contemplated in the final proviso of *W.Va. Code,* 61–10–1 [1970]. As we held in *Buzzo, supra,* video poker machines *can* be

used exclusively for harmless and lawful amusement purposes. In syllabus point 2 of *Buzzo* we said:

"Electronic video poker machines are not illegal *per se,* but fall within the exemption of *W.Va.Code,* § 61–10–1 [1970] and are not subject to seizure and forfeiture under the statute *unless evidence of use for illegal gambling purposes is established."* [emphasis added]

Thus, to the extent that there was any lingering ambiguity concerning the legitimacy of using video poker machines for gambling purposes, we resolved that ambiguity in syllabus point 2 of *Buzzo* and gave fair warning that the clear meaning of *W.Va.Code,* 61–10–1 [1970] would be given force and effect, and that if payouts of any type were made for successful play, the use of such machines was illegal gambling.

In *Buzzo* the question was *only* whether video poker machines could be seized and destroyed summarily as contraband gambling devices. We held that they could not be seized and destroyed unless there was evidence that the video poker machines were actually being used for gambling purposes and not for amusement purposes. In the case before us, however, the district court asked us whether *use* of these machines violates any West Virginia criminal statute, and the use to which the court refers involves a money pay out.

The defendants in this case place great weight upon the South Carolina case of *State v. Blackmon,* 304 S.C. 270, 403 S.E.2d 660 (1991), which held that South Carolina's gambling statute does not prohibit a grocery store owner from disbursing money to players who accumulate free plays on coin-operated, nonpayout machines with free play features. However, the South Carolina gambling statute contained added language that is not in our statute. The particular language quoted by the court from *S.C.Code* § 16–19–60 is: " 'Nothing in [Section] 16–19–40 ... shall extend to coin-operated nonpayout machines with a free play feature; provided

---

**3.** "Penal statutes must be strictly construed against the State and in favor of the defendant."

Syl. pt. 3, *State ex rel. Carson v. Wood,* 154 W.Va. 397, 175 S.E.2d 482 (1970).

that nothing herein shall authorize the licensing, possession or operation of any *machine* which disburses money to the player[.]'" 403 S.E.2d at 661. [Emphasis in original]

The South Carolina Supreme Court focused on the phrase "any machine which disburses money" as limiting the gambling device to this situation:

"Here, Section 16–19–60 plainly states that coin-operated nonpayout machines with free play features are exempt from the reach of Section 16–19–40 as long as the machines themselves do not disburse money to the player. Since the poker machines involved in this case fall within this specific statutory exemption, Blackmon cannot be indicted under Section 16–19–40." 403 S.E.2d at 662.

However, we do not have a clause in our statute limiting what we prohibit to a "machine which disburses money."

If we had not decided *Buzzo, supra,* a mere three years ago, the *Blackmon* case might give us just a moment's pause in light of that fact that the South Carolina statute does have some similarities to our own. However, in the *Buzzo* case we interpreted *our own statute* according to its *clear meaning* and indicated in a syllabus point that the use of video poker machines for gambling purposes is illegal under *W.Va.Code,* 61–10–1 [1970]. Under these circumstances, a person of ordinary intelligence could not have thought himself entitled to rely on *Blackmon.*

Accordingly, the certified questions having been answered, this case is ordered dismissed from the docket of this Court.

Certified questions answered.