25962. JORMAN *v.* THE STATE.

DECIDED DECEMBER 3, 1936.

*J. R. Terrell Jr.,* for plaintiff in error.
*L. L. Meadors, solicitor,* contra.

GUERRY, J. The defendant was convicted of operating a lottery. In connection with the picture show which he operated, he

had on each Monday what was termed "bank night." Those who purchased tickets and registered their names in a book kept for that purpose, had a number placed opposite their names and this number dropped in a barrel, and during the show some disinterested person drew a number from the barrel. If the person who had this number was present he or she was presented with $25. If not present, this sum was added to the amount to be given the next Monday night, and so on until the holder of the winning number was present, when the entire amount accumulated was turned over to the lucky person, and the amount to be awarded each Monday night started at $25 again. One witness who won $275 testified: "I registered at the theater. Before I registered at that theater, it was necessary that I have a ticket, buy a ticket. I bought a ticket at the box office." Another witness who won $75 testified: "The theater was doing what is known as 'bank night.' It is likewise common knowledge that you were required to register. At that time I registered. I did not buy a ticket. Later on they had bank night, and I bought a ticket to see the show, and at the same time this drawing was in progress and my name was called out, and I, being there, was instructed to come to the stage." The witness was paid $75. "I do not know of any one who has won without being present when his number was called." Another witness who won $200 testified: "I purchased a ticket when I went to the show. I could not have had my name drawn out and gotten a prize without my having paid my admission. It was necessary for me to have a ticket in order to participate in the drawing. . . When I registered, a number was assigned to my name. The corresponding number was placed in the box or barrel which was drawn from. . . I do not remember anything about it, as to what Mr. Jorman told me the rules were, except the person with the lucky-number ticket that was drawn would receive $25 Monday night if he was present." There was evidence also that in the event the show was crowded, and the patrons could not get on the inside, and they had purchased tickets, they could stand on the outside, and if their names were drawn on the inside it was also announced on the outside, and such were allowed to participate in the drawing. Witnesses for the defendant testified that they took a book and went over the city and got 2800 people to register their names therein. They

were paid one cent a name for this work. No charge was made for the registration. "When I approached a person and asked them to register, I just asked them to register. I explained to them, I think, in order to win the prize they would have to be at the theater. Mr. Jorman told me they would have to be at the theater in order to win. . . It was understood that they had to be in the show to get the money if their names were called." Another witness testified: "On bank night we fill up the house, overflow crowd out in the street quite frequently. We do not give free admission. We charge admission. Those who attend matinees are permitted to register their names, and then they need not be present that night. If their names happen to be the lucky ones called, a check is mailed them." Other witnesses swore that you do not have to have a ticket to have a chance to win the prize. One of the theater officials swore: "If a person bought a ticket and went into the theater, he had a chance of winning this prize. He would be eligible to win any night after he was in the register. He would have to be originally registered and on the night he paid his quarter in the theater and sat down and watched his number drawn, if his number was the right number, then he won the prize. He did not have to go in the theater. He could win it out in front if they called his number."

Counsel for plaintiff in error contends that in a lottery three elements are necessary: (1) consideration, (2) chance, and (3) prize; that no consideration was shown by the evidence; that there was evidence to the effect that bank-night patrons were entitled to a chance whether they bought theater tickets or not. In *Meyer* v. *State,* 112 *Ga.* 20 (37 S. E. 96, 51 L. R. A. 496, 81 Am. St. R. 17), it was said: "A merchant who gives to a designated class of customers an opportunity to secure by lot or chance any article of value *additional* [italics ours] to that for which such customers have paid violates the provisions of section 407 of the Penal Code, which declares that no person 'shall keep, maintain, employ, or carry on any lottery in this State, or other scheme or device for the hazarding of any money or valuable thing.'" Mutuality of risk is not necessary to constitute a lottery. The player or as in the present case, the purchaser of the ticket may get value received and the whole risk be assumed by the operator. "There must be between them a chance of gain and a chance of loss; but

it does not follow that each of the parties to the bet must have both these chances." *Meyer* v. *State,* supra. In *Russell* v. *Equitable Loan & Security Co.,* 129 *Ga.* 154, 161 (58 S. E. 881, 12 Ann Cas. 129), it was said: "These statutes are directed against lotteries, gift enterprises, or other similar schemes. In a lottery there must be union of the three elements, consideration, chance, and prize." See also *Standridge* v. *Williford-Burns-Rice Co.,* 148 *Ga.* 283 (96 S. E. 498); *Jenner* v. *State,* 173 *Ga.* 86 (159 S. E. 564); *Brockett* v. *State,* 33 *Ga. App.* 57 (125 S. E. 513); *Sparks* v. *State,* 48 *Ga. App.* 498, 502 (173 S. E. 216). The plaintiff in error insists, inasmuch as some evidence for the defendant tended to show that the purchase of a ticket to the show was not a condition precedent to the participation in the drawing, that as to such there was no consideration, and one of the elements of a lottery was not present, and that, to use Judge Bleckley's statement "that where three are necessary, two equals nothing," the crime is not complete. It so happens that all the witnesses in the case who held winning numbers testified that they had to buy tickets to be eligible for the drawing, and the defendant's witnesses who were helpers in the show testified that they had never seen any one win except those who had purchased tickets. It can not alter the fact that the operator may have given free chances to some without the purchase of tickets; even so, the lottery scheme as to a gift enterprise was present to all the rest, and this fact did not prevent it from being a lottery under the law of Georgia. In Washington *v.* Danz, 250 Pac. 37, it is said: "The distribution by a theater of produce contributed by merchants for advertising purposes as an additional attraction one night each week, according to numbers designated by chance on tickets furnished with the tickets of admission may be found to be within the prohibition of a statute defining a lottery as a scheme for the distribution of money or property by chance among persons who have paid or agreed to pay a valuable consideration for the chance, and it is immaterial that *the tickets* to the drawing are offered to persons not purchasing theater tickets." The Supreme Court, in *Equitable Loan &c. Co.* v. *Waring,* 117 *Ga.* 599, 615 (44 S. E. 320, 62 L. R. A. 93, 97 Am. St. R. 177), in discussing lotteries said: "As fast as statutes are passed, or decisions made, some skilful change is devised in the plan of operations, in the hope of getting just

beyond the statutory provisions, but so long as the inherent evil remains, it matters not how the special facts may be shifted, the scheme is still unlawful." In view of what is here said, the assignment of error in reference to the refusal of the request to charge is without merit. The remaining assignments as to the introduction of evidence, if error, were harmless. The evidence amply authorized the verdict.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*