STATE OF WEST VIRGINIA

*v.*

THE GREATER HUNTINGTON THEATRE CORPORATION

(No. 10153)

Submitted September 13, 1949. Decided October 11, 1949.

Lovins, Judge, not participating.

*George S. Wallace, George S. Wallace, Jr., Philip P. Gibson, J. J. N. Quinlan,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, *Thomas J. Gillooly,* Assistant Attorney General, for defendant in error.

Fox, Judge:

The Greater Huntington Theatre Corporation, a corporation, hereinafter called defendant, was indicted at the October term, 1948, of the Common Pleas Court of Cabell County, on a charge of conducting a lottery in the City of Huntington in said county. A demurrer and motion to quash the said indictment were overruled. A trial of the case before a jury resulted in a general verdict of guilty, on which, after overruling a motion to set aside said verdict and grant a new trial, judgment was entered imposing a fine of $1,000.00. A petition to the Circuit Court of Cabell County for a writ of error to the judgment aforesaid was denied, and to that ruling this Court granted this writ of error.

The indictment against the defendant is based upon Code, 61-10-11, which reads as follows:

> "If any person shall set up or promote or be concerned in managing or drawing a lottery or raffle, for money or other thing of value, or knowingly permit such lottery in any house under his control, or knowingly permit money or other property to be raffled for in such house, or to be won therein, by throwing or using dice, or by any other game of chance, or knowingly permit the sale in such house of any chance or ticket, or share of a ticket, in a lottery, or any writing, certificate, bill, token or other device purporting or intended to guarantee or assure to any person or to entitle

him to a prize, or a share of, or interest in, a prize to be drawn in a lottery, or shall, for himself, or any other person, buy, sell, or transfer, or have in his possession for the purpose of sale, or with intent to exchange, negotiate, or transfer, or shall aid in selling, exchanging, negotiating, or transferring a chance or ticket, or a share of a ticket, in a lottery, or any such writing, certificate, bill, token or device, he shall be guilty of a misdemeanor, and, upon conviction, shall, in the discretion of the court, be confined in jail not more than one year or be fined not exceeding one thousand dollars, or both: Provided, however, That this section shall not be deemed to apply to that certain type or form of lottery or raffle designated and familiarly known as 'policy' or 'numbers'."

The statute quoted above was, apparently, enacted to meet the requirements of Section 36, Article VI of the Constitution of this State which provides that:

"The Legislature shall have no power to authorize lotteries or gift enterprises for any purpose, and shall pass laws to prohibit the sale of lottery or gift enterprise tickets in this State."

The indictment returned as aforesaid, against the defendant, is in four counts, and eliminating formal allegations, the first count thereof charges that the defendant "did unlawfully set up and promote and was concerned in managing and drawing a lottery and raffle for money and other things of value, against the peace and dignity of the State." The second count charges that the defendant "did knowingly and unlawfully permit a lottery and raffle for money and other things of value to be conducted on premises under its control, against the peace and dignity of the State." The third count charges that the defendant "did knowingly and unlawfully permit money and other property to be raffled for and won in a game of chance played, held and conducted on premises under its control, against the peace and dignity of the State." And the fourth count charges that the defendant "did knowingly and unlawfully permit, for a consideration, on premises under its control, the signing of cards

and entering of names to be used in conducting a lottery for money and other things of value on said premises, the signers of the cards, selected by chance, being entitled to a prize and share of and interest in a prize to be drawn in said lottery, against the peace and dignity of the State."

As the first step in its defense, the defendant appeared by its counsel and moved the court to require the prosecuting attorney to file a bill of particulars, showing fully the nature of the offense charged in the indictment, and the facts and circumstances upon which the State would rely for a conviction, and tendered an affidavit in support of such motion. There being objection thereto on the part of the State, the court, on November 15, 1948, denied such motion to which ruling the defendant excepted. The defendant then moved the court that the prosecuting attorney be required to furnish it a list of the jurors by whom it was to be tried, to which motion there was objection on the part of the State, and the same was overruled, to which ruling the defendant excepted. On the same day the defendant tendered and filed its demurrer to the said indictment. Later, on December 6, 1948, the same demurrer, together with a motion to quash, was interposed. The demurrer was to the indictment and each count thereof, and it was alleged therein that the indictment failed to meet the requirements of Section 14, Article III of the Constitution of this State, in that it failed to inform the defendant fully and plainly of the character and cause of the accusation against it. As to the first count it is alleged that while said indictment follows the language of the statute, it was not sufficient to inform the defendant of the time and place of the alleged offense so as to protect it upon a second indictment for the same offense, for the alleged reason, that the defendant was interested in four different theatres all situated in Cabell County, West Virginia. As to count two, it is alleged that it failed to give the defendant notice of the time and place in which the offense is alleged to have been committed. As to the third count, it is alleged that said count in stating the three types of lotteries set out in the statute, namely, an ordinary raffle; a winning in which the dice game

is the element of chance; and a winning by means of any game of chance; is defective because it does not charge which of the three schemes or devices was used. Also it is contended that it does not fix the date or describe the premises where the alleged offense took place. As to count number four, it is alleged that: "This count does not state any offense under the statute.", and that "there is no provision in the statute which makes the signing of a card or entering of a name to be used by some person not named in conducting a lottery for money an indictable offense." Issue on the demurrer being joined said demurrer was overruled to which ruling the defendant excepted. Nothing was presented by the defendant in support of its motion to quash other than the grounds urged in support of the demurrer. The motion to quash was overruled and an exception to such ruling taken at the time.

The errors assigned will be stated in the order in which we propose to discuss the case. First, the refusal of the trial court to require the State to file a bill of particulars. Second, refusal of the court to require the prosecuting attorney to furnish to the defendant a list of the jurors by whom it was to be tried. Third, the overruling of the demurrer to the indictment, and motion to quash. Fourth, the refusal of the court to permit it to submit interrogatories to the jury touching certain matters of fact. Fifth, the giving of Instruction No. 2 offered by the State and the refusal of the court to give Instructions Nos. 2, 7, 9 and 12 offered by the defendant. And, sixth, the refusal of the court to declare a mistrial on account of alleged improper remarks of the prosecuting attorney in the argument of the case before the jury.

We do not think there was any error in the refusal of the court to require the State to file a bill of particulars. The entire record before us shows clearly that the defendant was in no wise misled as to the charges against it and, in fact, there is little, if any, conflict on the factual situation. The filing of a bill of particulars, even to the extent of outlining all of the evidence proposed to be introduced at the trial on the part of the State, would

have been of no value to the defendant, because the testimony of its own witnesses in support of its theory of the manner in which its business was conducted, raised the legal question involved herein, namely, whether, under all the facts and circumstances of this case, Code, 61-10-11, inhibits the course of business admittedly carried on by the defendant. Code, 56-4-19, provides that a defendant may, in some circumstances, require a plaintiff to file a bill of particulars as to the nature of his claim, and the facts expected to be proved at the trial; and in *State* v. *Lewis,* 69 W. Va. 472, 72 S. E. 475, it was held that this section should be applied to the trial of criminal cases. It may be said, therefore, that, in a proper case, a defendant charged with crime may require the State to file a bill of particulars; but whether or not a bill of particulars be required in a particular case, rests, to a very great degree, on the sound discretion of the trial court. We cannot better illustrate our views on this point than by quoting from *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. (2d) 553, where, in the body of the opinion, it is stated:

> "Generally the granting or the refusing of a motion for a bill of particulars is in the sound discretion of the trial court. *Dale* v. *Atwell,* 103 W. Va. 590, 138 S. E. 201; *State* v. *Joseph,* 100 W. Va. 213, 130 S. E. 451; *Adkins* v. *Wayne County Court,* 94 W. Va. 460, 119 S. E. 284; *State* v. *Counts,* 90 W. Va. 338, 110 S. E. 812; *State* v. *Lewis,* 69 W. Va. 472, 72 S. E. 475. It is within the discretion of the court whether a bill of particulars is sufficient, or whether in fact a bill of particulars should be required. *State* v. *Koski,* 101 W. Va. 477, 133 S. E. 79. Denial of a motion to require the State to supply a bill of particulars in a criminal case is not cause for reversal by the appellate court unless it clearly appears that such denial was prejudicial to the defendant. * * *"

Nor did the trial court commit error in refusing to require the prosecuting attorney, or the State, to furnish to the defendant a statutory list of the jurors by whom it was expected to try the defendant. Code, 62-3-1, provides that:

"When an indictment is found in a court having jurisdiction, in any county, against a person for a felony, * * * The accused shall be allowed counsel if he desire it to assist him in his defense, and a copy of the indictment, and of the list of the jurors selected or summoned for his trial, as provided in the third section ( §6192) of this article, shall be furnished him, without fee, upon his request, at any time before the jury is impaneled."

Clearly, this statutory requirement applies to felony cases only, and we have not been cited to any authority for the proposition that such list shall be furnished to a defendant charged with a misdemeanor as in this case. We construe the statute not so much as assuring to a defendant in a felony case a copy of the indictment, and a list of the jurors, because without the statute he would certainly be entitled to examine not only a copy of the indictment, but a list of the jurors, which are matters of record to which any citizen has access; but to provide that he shall be furnished counsel and a copy of indictment and a list of the jurors without fee. We see no reason why we should go beyond the plain terms of the statute.

When we come to the indictment in the case, we are met with the proposition, which seems to be generally accepted, that usually, an indictment which in substance states an offense in the language of the statute which creates it, is sufficient. See, *State* v. *Hudson, supra,* and the cases therein cited. The indictment in this case follows very closely the language of Code, 61-10-11. Certainly the first, second and third counts do so, and in argument and briefs there is little if any contrary contention. It is urged, however, that the fourth count of the indictment was not stated in the language of the statute, in that the statute does not make any reference to the signing of cards and the entering of names to be used in conducting a lottery for money and other things of value on the premises involved. When we read Code, 61-10-11, we find this language which makes it an offense to "knowingly permit the sale in such house of any chance or ticket, or share of a ticket, in a lottery, or any writing, cer-

tificate, bill, token or other device purporting or intended to guarantee or assure to any person, or to entitle him to a prize, or a share of, or interest in, a prize to be drawn in a lottery, or shall, for himself, or any other person, buy, sell, or transfer, or have in his possession for the purpose of sale, or with intent to exchange, negotiate, or transfer, or shall aid in selling, exchanging, negotiating, or transferring a chance or ticket, or a share of a ticket, in a lottery, or any such writing, certificate, bill, token or device, * * *." We think this language is broad enough to cover every allegation contained in the fourth count of the indictment. The words "token or device" are in themselves generic terms which include all the instrumentalities which might be used in conducting a lottery. In addition to this, there can be no possible prejudice to the defendant from the language used in this count. It furnishes to the defendant a part of the information which a bill of particulars would probably have disclosed, because it defines, to some extent, the manner in which the defendant allegedly carried on a lottery, and to that extent favored the defendant by informing it of the nature of the offense it was called upon to meet.

Before the case was submitted to the jury, defendant moved the court to submit the following interrogatories:

"If the jury returns a verdict finding the defendant guilty as charged in the indictment, it will then answer the following interrogatories:

"1. Was there a consideration moving from the persons who participated in the drawings on give away day or night to the defendant for the prizes?

"2. If the jury answers the first question yes, it will find what was the consideration moving from the participants in the drawing to the defendant?"

The court refused to permit such interrogatories to be submitted to the jury, and, in our opinion, did not err in so ruling. The question of whether there was consideration involved in the manner employed by the defendant in its so called "give away" program, was submitted to

the jury by the State's Instruction No. 2, and by instructions given on behalf of the defendant. Furthermore, it has been held that: "The practice of submitting interrogatories is not followed in the trial of criminal cases." *State* v. *Bowles*, 109 W. Va. 174. See also, *State* v. *Boggs*, 87 W. Va. 738, 106 S. E. 47.

When we consider State's Instruction No. 2 as given, we reach the heart of this case. That instruction reads:

> "The court further instructs the jury that a lottery consists of three elements:
> "1. The distribution of money or property.
> "2. Chance.
> "3. A valuable consideration paid for the chance.
> "And in this connection you are further instructed that if after having heard and considered all the evidence in this case, you believe beyond a reasonable doubt that The Greater Huntington Theatre Corporation, a corporation, distributed money or property in Cabell County, West Virginia, by chance and that the said money or property was distributed for the purpose of attracting additional persons to either the Keith-Albee Theatre or the Orpheum Theatre located in the City of Huntington in said county, and that any of such persons paid a valuable consideration for admission tickets in order to register and thereby be entitled to a chance to receive a prize, then the element of consideration was present and you should find the said corporation guilty as charged in the indictment in this case."

The instruction is based upon the case of *State* v. *Hudson, supra,* in which this Court held that:

> "The essential elements of a lottery are consideration, prize and chance; and any scheme or device, by which a person, for a consideration, is permitted to receive a prize or nothing, as may be determined predominately by chance, is a lottery."

This statement of law is not controverted by the defendant, and the objection to the instruction is primarily on

the language that: "* * * the said money or property was distributed for the purpose of attracting additional persons to either the Keith-Albee Theatre or the Orpheum Theatre located in the City of Huntington in said county, * * *." It is contended that there was no evidence in the trial that the theatre corporation distributed funds for the purpose of attracting additional persons to its theatres. It may be stated here that there is no apparent reason why the Orpheum Theatre should have been mentioned in the instruction, but that mention was not in any wise prejudicial to the defendant, and may be passed as harmless error.

It is true that there is no direct evidence of the purpose of the defendant corporation in conducting what it terms a "give away" program in connection with its theatre business in the City of Huntington, which, according to the evidence, is confined in this case to the Keith-Albee theatre. The evidence discloses that on Wednesday night of each week, there is a drawing by which prizes are distributed, the highest being one thousand dollars and the other prizes being twenty-five dollars, the aggregate prizes being fifteen hundred dollars, and paid to people who had registered and became thereby entitled to participate in the drawing, to determine by chance who should win the prizes offered. We are not offered any explanation of why the defendant distributed, in this open-handed way, these considerable sums of money. We think we are entitled to assume that the defendant is engaged in the theatre business in the City of Huntington with the idea of earning profits from that business; and we do not believe that the giving away of these sums of money was intended as a matter of mere gratuity to the public. We think all of the circumstances of the case lead to the sound and sensible view that "give away" night was conducted for the purpose of attracting additional persons to the theatre, which, as we understand it, was the only night in which persons could register. There are many things which can not be shown by absolute demonstration. For this reason, juries and courts are permitted to draw inferences from facts and situations which are themselves clearly presented to

them. Motive, intent or malice are generally determined to exist, or not to exist, through inferences which may be drawn from acts, conduct or circumstances. Here we do not know what the actual intent of the defendant was. We cannot read the minds of its manager or officials. But we do know what they did, and from these acts we conclude that when the defendant inaugurated these "give away" programs it did so with the idea that the increased attendance at its theatres would result in greater gains to it than the sum total of the prizes to be awarded, and thus a net profit to the defendant would result. We can only draw one conclusion from this record, and that is that the jury had a right to believe that give away night in the Keith-Albee theatre in Huntington was carried on with the idea of attracting to its entertainments and awards of prizes the people of the City of Huntington and adjacent areas. That such a motive existed, seems to us too plain for argument.

The State's Instruction No. 2 told the jury that to constitute a lottery, consideration must be paid for the chance, and it is earnestly insisted by the defendant that the mere purchase of a ticket to the theatre, for the purpose of enjoying the entertainment offered, did not constitute a consideration for the chance to participate and receive a prize in the give away program. We are of the opinion that large groups of those who attended the theatre on give away night, and who registered, and paid admission, thereby parted with their money as a consideration for the right to participate in the drawing to follow, along with the privilege of seeing the entertainment provided for them. In other words, they paid to see the entertainment, along with the chance to participate in the give away program.

The question raised as to consideration is one of first impression in this State, but the following cases from other jurisdictions have been cited in the brief of the Attorney General: *Grimes* v. *State*, 235 Ala. 192, 178 So. 73; *Affiliated Enterprises* v. *Waller*, 1 Terry 28, 5 A. (2d) 257; *Jorman* v. *State*, 54 Ga. App. 738, 188 S. E. 925; *State*

v. *Schubert Theatre Players Co.*, 203 Minn. 366, 281 N. W. 369; *State* v. *McEwan*, 343 Mo. 213, 120 S. W. (2d) 1098; *State* v. *Jones*, 44 N. M. 623, 107 P. (2d) 324; *McFadden* v. *Bain*, 162 Ore. 250, 91 P. (2d) 292. We have examined these cases and, in our opinion, they sustain the conclusion above stated by us. The cases of *Yellow-Stone Kit* v. *State*, 88 Ala. 196, 7 So. 338; *Commonwealth* v. *Wall*, 295 Mass. 70, 3 N. E. (2d) 28; *State* v. *Eames*, 87 N. H. 477, 183 A. 590; *Affiliated Enterprises* v. *Gruber*, (C. C. A. Mass.) 86 F. (2d) 958, cited by counsel for defendant, may sustain a different theory; but we are of the opinion that not only the weight of authority, but the reasonings advanced, supports the theory of the first line of cases cited, and sustain the conclusion we have reached in this case.

Defendant does not concede that a purchase of a ticket to the entertainment constitutes such consideration; but it says that even if that theory should be applied to those who purchased tickets, it clearly appears that persons who had not purchased tickets to the entertainment were entitled to and did register and became entitled to participate in the drawing, and entitled, if they were lucky, to receive a winning number, and the prize which that number carried. It is quite true that the evidence clearly shows that people who purchased tickets for the entertainment registered; and that in some instances people who did not purchase such tickets were permitted to register and, it might be said, paid no consideration for the chance they obtained to participate in the drawing for the lucky numbers. But the instruction told the jury that if any of such persons had paid a consideration for admission tickets in order to register, the defendant should be found guilty as charged in the indictment. Undoubtedly, many did buy tickets and register, while some registered without buying tickets; but, in our view of the case, the mere fact that the defendant was willing to voluntarily, and without consideration, offer an opportunity to win these prizes to certain people, does not relieve it of the consequences which arise from the fact that others who attended the entertainment purchased tickets therefor, and registered, and thereby paid a consideration

which brings defendant's program plainly within the rule announced in *State* v. *Hudson, supra,* and clearly within the provisions of Code, 61-10-11. We have no way of knowing what percentage of people registered without purchasing tickets; but if the principles contended for by defendant be upheld by this court, then lotteries may be held and conducted throughout West Virginia so long as a few people are permitted to register without paying the consideration entailed in purchasing a ticket to an entertainment where a lottery is being conducted. By this scheme or device the Constitution and statutes of this State pertaining to lotteries would be nullified.

On the whole, we are of the opinion that the conduct of the defendant must be gauged, not by the fact that certain people are permitted to register for a chance to win a prize on give away night, without consideration moving from them, but rather on the whole plan and scheme by which the defendant conducted its business, and as a part thereof gave away prizes to persons who gave a consideration for a chance to win a prize, and whose right to a prize was determined by chance.

We see no error in the refusal of the court to grant Instructions Nos. 2, 7, 9 and 12 offered by the defendant. In particular, we think Instruction No. 2, offered by the defendant, and refused by the court, is fully covered by Instruction No. 4 which the court gave. Defendant's Instructions Nos. 7 and 9 merely bear upon the duty of the jury in respect to giving the defendant the benefit of any doubt, and that they should find the defendant not guilty, if such finding be, consistent with any reasonable showing of its innocence. Instruction No. 12 is merely an explanation of the rule governing the application of the rule of reasonable doubt as applied in criminal cases, a rule which has never been successfully defined by any court, to our knowledge. The instruction given by the court telling the jury, in plain terms, that the indictment was not to be considered as indicative of the guilt of the defendant, and that the State must prove every essential element of its case beyond all reasonable doubt, fully protected the defendant on the questions of fact involved.

There was no error in the refusal of the court to order mistrial of the case on account of the language used by the prosecuting attorney in the argument of the case before the jury. The prosecuting attorney did use language which he admitted had nothing to do with the case. We cannot easily enforce a rule which prohibits counsel from discussing matters having no substantial bearing upon the issue, involved, for the offense is too frequently committed, and is indulged in in all types of cases. The argument complained of merely attempted to illustrate what the arguments of the counsel for the defendant might lead to. The fact that he used other criminal offenses as illustrations could have had no prejudicial effect on the defendant as we see it. What the jury was trying in this case was whether the defendant was conducting a lottery. About the only question it had to determine was whether there was a consideration involved, on the part of those who purchased tickets, and who followed that purchase by registering, and thereby becoming entitled to a chance at the prize which would be given away sometime during the entertainment to follow. That the essential elements of prize and chance were present and proved is not questioned by the defendant. By their verdict the jury held that there was a consideration, and, as we appraise the situation, the argument of the prosecuting attorney could not have influenced the jury on that point. The point to which his argument was directed was to combat the contention that the defendant, in permitting persons to register without purchasing a ticket, saved the entire plan from being a lottery. This, we think, was a matter of legal construction for the court, and not for the jury. We have already determined that such free registrations did not save the defendant from the consequences of the general scheme and plan which, we think, the record shows was intended to attract people to the theatre who would add to the revenues of the defendant by buying tickets to the entertainment, and, as a part of the plan, become entitled to register, even though under the plan they could have registered without purchasing a ticket. Furthermore, the question of whether the remarks of the prosecuting at-

torney concerning the defendant entitled it to a new trial, depends almost entirely on whether the rights of the defendant were prejudiced, or manifest injustice results therefrom. *State* v. *Hively,* 103 W. Va. 237, 136 S. E. 862; *State* v. *Simon,* 132 W. Va. 322, 52 S. E. (2d) 725. We do not think that such prejudice resulted from the argument of the prosecuting attorney in this case.

Seeing no error in the rulings and judgment of the Common Pleas Court of Cabell County, nor in the refusal of the Circuit Court of said county to grant a writ of error thereto, the judgments of the said Common Pleas Court and Circuit Court are affirmed.

*Judgments affirmed.*